■ THOMAS J. HARTY et al., Respondents, v MARGARET LENCI, M.D., et al., Defendants, and UNIVERSITY HOSPITAL FOR THE ALBERT EINSTEIN COLLEGE OF MEDICINE, Appellant. [743 NYS2d 97] —Order, Supreme Court, Bronx County (Barry Salman, J.), entered July 17, 2001, which denied defendant-appellant's motion for summary judgment dismissing the complaint as against it, unanimously reversed, on the law, without costs, and the motion granted. The Clerk is directed to enter judgment in favor of defendant-appellant dismissing the complaint as against it.

It is undisputed that plaintiff Holly Harty (plaintiff) suffered the onset of Cauda Equina Syndrome, a spinal condition, on

April 3, 1996. The record establishes that defendant-appellant The Jack D. Weiler Hospital of the Albert Einstein College of Medicine, a Division of Montefiore Medical Center, sued herein as The University Hospital for the Albert Einstein College of Medicine (the Hospital), did not become responsible for plaintiff's medical care until 4:23 P.M. on April 8, 1996, when she was admitted to the Hospital for surgery by Dr. John Olsewski, a Hospital-affiliated private attending physician, with a diagnosis of Cauda Equina Syndrome. The diagnosis was based on emergency MRI's taken at the Hospital under Dr. Olsewski's direction within the half hour prior to the admission. The Hospital thereafter initiated surgery on plaintiff at 7:55 P.M. on the evening of April 8th. It is the theory of plaintiff's action against the Hospital that her permanent injuries were caused in part by the delay between the diagnosis of plaintiff's condition and the Hospital's initiation of surgery, which delay is alleged to have constituted a material deviation from accepted standards of medical practice.

On the present record, as a matter of law, plaintiff cannot prevail against the Hospital at trial. The affidavit of plaintiff's medical expert opines that Cauda Equina Syndrome will result in permanent injuries within 24 hours, absent surgical intervention. Here, it is undisputed that the onset of plaintiff's condition occurred on April 3, 1996, five days before the Hospital is alleged to have had any involvement in plaintiff's care. Thus, according to plaintiff's own expert, plaintiff may be presumed to have suffered permanent injuries long before she had any contact with the Hospital on April 8th. Since plaintiff has not produced any evidence tending to show that the delay of approximately 3½ hours between her admission to the Hospital and the initiation of surgery on April 8th materially exacerbated her presumably preexisting injuries, she cannot establish that such delay, even if it constituted malpractice, was the proximate cause of any harm.

Even if the foregoing did not require granting the Hospital summary judgment, such result would be required by the absence of any evidence tending to show that the Hospital deviated from accepted medical practice, even by the standards articulated by plaintiff's expert. According to plaintiff's expert, surgery should have been initiated within three hours of the Hospital's becoming "aware of plaintiff's condition of Cauda Equina Syndrome." Plaintiff states in her opposition affidavit that she and/or other members of her family spoke by phone with unidentified "medical personnel" of the Hospital before noon on April 8, 1996, and were told at that time that she suf-

fered from Cauda Equina Syndrome. Based on this affidavit, plaintiff argues that she has raised an issue as to whether the Hospital was responsible for a delay of seven to nine hours. Plaintiff's claim in her affidavit that she spoke to Hospital personnel before noon, however, is flatly contradicted by her own prior deposition testimony, and that of her husband, to the effect that neither of them spoke with any Hospital personnel until plaintiff arrived at the Hospital for MRI's at about 4:00 P.M. A party's affidavit that contradicts her prior sworn testimony creates only a feigned issue of fact, and is insufficient to defeat a properly supported motion for summary judgment (see, e.g., *Phillips v Bronx Lebanon Hosp.*, 268 AD2d 318, 320; *Kistoo v City of New York*, 195 AD2d 403, 404).

Finally, plaintiff argues that Dr. Olsewski, the admitting physician, and Dr. Joseph Bosco, another physician with whom plaintiff's husband spoke by telephone that morning, were the unnamed "medical personnel" of the Hospital who became aware of her condition before noon. This argument is entirely without merit. Plaintiff never claimed in the prior proceedings that either Dr. Olsewski or Dr. Bosco was a Hospital employee whose negligence, if any, could be imputed to the Hospital, and such claim is not properly made for the first time in an appellate brief, especially in the absence of any supporting evidence in the record. In particular, neither physician was identified in plaintiff's verified bill of particulars as a person for whose negligence the Hospital could be held vicariously liable. Moreover, prior to the instant appeal, plaintiff never made any claim that either Dr. Olsewski or Dr. Bosco acted negligently, and neither physician has been sued in this action. In any event, there is nothing in the record to support a contention that either of these physicians was negligent. Concur—Nardelli, J.P., Mazzarelli, Andrias, Rosenberger and Friedman, JJ.