Bajaha v Mercy Care Transp., Inc. (2019 NY Slip Op 03457)





Bajaha v Mercy Care Transp., Inc.


2019 NY Slip Op 03457


Decided on May 2, 2019


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on May 2, 2019

Sweeny, J.P., Tom, Webber, Kahn, Kern, JJ.


8356 304970/15

[*1]Foday Bajaha, Plaintiff-Respondent,
v
Mercy Care Transportation, Inc., et al., Defendants-Appellants, Robert Rivera, Defendant.


Cascone & Kluepfel, LLP, Garden City (Beth L. Rogoff Gribbins of counsel), for appellants.
Pollack, Pollack, Isaac & DeCicco, LLP, New York (Jillian Rosen of counsel), for respondent.



Order, Supreme Court, Bronx County (Donald A. Miles, J.), entered on or about June 20, 2018, which granted plaintiff's motion for partial summary judgment on the issue of liability, reversed, on the law and the facts, without costs, and the matter remanded for further proceedings.
This personal injury action arises from an incident occurring on November 15, 2014 at shortly after 10 a.m. in an ambulette that was transporting a nonparty disabled patient from the Staten Island Care Center, a rehabilitation facility, to a hospital. Plaintiff was a health care aide employed by the facility. Defendant Rivera was employed as a driver for the ambulette by defendant Mercy Care Transportation, Inc. Plaintiff, who was assigned by the facility to accompany the patient to the hospital, testified that when he entered, the patient was already inside the ambulette in a wheelchair. The factual accounts of what occurred next diverge in a manner that precludes summary judgment as to liability against defendants.
Plaintiff testified at his deposition that when he arrived at the ambulette, the driver was already seated inside and was using his phone. Plaintiff entered the compartment of the ambulette through the side door on the passenger side of the vehicle. The patient was in a wheelchair in the middle of the ambulette. Plaintiff testified that he did not have his seat belt on; subsequently, though, he testified that there was no seat belt, and that "it's just a chair, you just sit." He testified that as the vehicle pulled out fast he may not have been sitting yet, causing him to fall to the floor and the wheelchair to tip over onto him, at which point, plaintiff claimed, he blacked out for four or five seconds, impairing his memory. Plaintiff testified that he could not recall how the wheelchair came to fall onto him or the direction in which it fell, except that it flipped over, falling onto and scratching his left knee, and that the patient called out in fright.
It took about a half block before the vehicle came to a gradual stop. When the driver opened the side door to see what had happened, plaintiff claimed that he had already uprighted himself, had lifted the wheelchair off of him and was sitting in his seat. The patient, who sustained a bump on his head and was screaming, had been strapped into the wheelchair and so had not fallen out. Plaintiff was unaware whether the wheelchair had been fastened to the vehicle. The driver called in the incident to a supervisor who, when plaintiff was handed the phone, tried to blame plaintiff for the accident.
In his affidavit in support of his motion for summary judgment, plaintiff claimed that the driver had "abruptly started the ambulette, before I could secure myself within the vehicle causing me to be thrown violently and precipitously within the vehicle," as a result of which he "came into contact with the patient's wheelchair," and thereby was injured.
In stark contrast, Rivera, the driver, testified at his deposition that he had wheeled the patient into the ambulette, secured the wheelchair by locking the wheels and further secured it [*2]with four hooks attached to tie-downs fastening the wheelchair to the vehicle, which when tightened to prevent its movement in all four directions. After exchanging pleasantries, Rivera saw plaintiff enter the ambulette and sit down. He then showed plaintiff to his seat in the rear of the ambulette, and made certain he fastened his seatbelt. This is in factual conflict with plaintiff's testimony that there were no seat belts, and, variously, that he had either been standing or sitting. Rivera testified that after plaintiff was seated, he left the ambulette for 5 to 10 minutes as he reentered the building to retrieve his cell phone. This, too, is factually inconsistent with plaintiff's testimony. When Rivera returned, plaintiff and the patient were in the same place as when he had left and he reinspected the hooks. Here, too, a factual inconsistency is presented.
Rivera testified that he pulled out of the parking lot slowly and turned right onto a street that had a sharp uphill gradient, but within a few seconds heard the patient shout "[W]hat the f— is going on here?" Rivera "tapped" on the brakes as he looked in the rear view mirror. He observed that the wheelchair had turned over backwards, with its back on the floor and the patient's feet in the air. Rivera found a flat location about 30 to 50 feet ahead and pulled off of the road. When he opened the door he observed plaintiff, who seemed to still be sitting, engaging in a "pulling" motion and trying to pick up the patient in the wheelchair. The patient was still on his back with his feet still in the air at this time; plaintiff gave no indication that he, himself, felt any pain. Plaintiff and Rivera together returned the wheelchair to an upright position. Rivera observed that two hooks in the front of the wheelchair had been undone, but had no idea how that could have occurred. Upon inquiry about whether he was hurt, the patient responded, "I think I hit myself on the head." By contrast, plaintiff responded "no" when Rivera inquired whether he had been injured. Plaintiff, who had been frightened rather than angry, became angered in a phone conversation with Rivera's dispatcher, and then related to Rivera that the dispatcher was trying to blame plaintiff for the accident. Plaintiff told Rivera that since "nobody got hurt," he had not intended to report the incident but, angered, now declared, "I'm injured." Rivera testified that he filled out an accident report immediately thereafter.
Rivera denied having pulled out of the parking lot at a high speed before plaintiff had a chance to sit down, and, rather, claimed that he had shown the plaintiff to his seat and made sure that the aide fastened his seat belt. Rivera further averred that when he returned from retrieving his cell phone in the building he checked that plaintiff was seated and reminded him to fasten his seat belt, after which the door was firmly closed. Rivera claimed that he had pulled out of the parking lot slowly and heard a shout after he had gone only a short distance. Rivera averred that both the patient and plaintiff assured him that they were okay.
These two sworn accounts present unresolved factual inconsistencies in many respects that raised triable issues as to how the accident occurred and preclude summary judgment against defendants. Here, whether plaintiff's alleged injuries were caused by Rivera's driving, and whether he even suffered injuries as a consequence of the driver's conduct, are contested issues requiring a trial.
Plaintiff was not merely a passenger relatively immobilized in a vehicle's rear seat; he had relative mobility in carrying out his responsibilities for a disabled third party, which requires further fact-finding, and potentially a credibility evaluation. The granting of summary relief with the existence of the above-noted factual issues could result in holding the driver liable without adequate proof of fault, and would be at the expense of fact-finding on a more complete record. Furthermore, the driver's claimed absence from the vehicle during what may prove to be a consequential time period with respect to the wheelchair being secured, and even potential evidence pertaining to the structural soundness of the tie-downs attached to the wheelchair itself, which became undone without explanation, require further factual review and may also likely present triable issues of credibility. What transpired in the ambulette between plaintiff and the patient during the time Rivera left the vehicle and returned to the building to retrieve his cell phone is unknown. The record on appeal does not include either testimony or an affidavit by the patient, nor do we know if the patient will be a witness at trial.
We disagree with the dissent's statement that "defendants have failed to offer any explanation of the proximate cause of the accident." It is plaintiff's burden as the moving party for summary judgment to establish defendants' negligence as a proximate cause of plaintiff's [*3]injuries. Here, defendants adequately rebutted plaintiff's claim of negligence on their part, and thus plaintiff has failed to establish defendants' negligence and proximate cause. If a trier of fact finds defendants' version of events to be credible, then no liability should be imposed on them.
All concur except Sweeny, J.P. and Kahn, J. who dissent in a memorandum by Kahn, J. as follows:




KAHN, J. (dissenting)


On this appeal, the record clearly shows that plaintiff Foday Bajaha was an innocent passenger in defendants' ambulette. Furthermore, defendants have failed to offer any explanation for the accident that does not involve their negligence. I therefore respectfully dissent and would affirm Supreme Court's order granting partial summary judgment to plaintiff.
In support of plaintiff's motion for partial summary judgment on the issue of liability, plaintiff averred that as he was entering defendants' ambulette to accompany his wheelchair bound patient and before he was able to secure himself in the vehicle, the driver, Robert Rivera, abruptly drove the ambulette away, causing plaintiff to be violently thrown about the interior of the vehicle. He claimed that he fell down on the floor and was rendered unconscious for 5 to 10 seconds, and that when he regained consciousness, his patient's wheelchair had fallen on top of him, with the patient still in the chair, causing him serious injuries.
In opposition, defendants submitted the affidavit of defendant Rivera, the ambulette driver. In his affidavit, Rivera averred that he secured the patient by locking the wheels of the wheelchair and securing the knobs on the tie-downs to ensure that the wheelchair was in locked position in the ambulette, then showed plaintiff his seat and made certain that plaintiff fastened his seat belt. He further stated that he then left the ambulette and, a few minutes later, checked to ensure that plaintiff was seated and reminded him to fasten his seat belt. Rivera averred that he then began to drive away slowly, but stopped the vehicle after having driven only a short distance upon hearing shouting. He stated that he then saw that the wheelchair had fallen over and that plaintiff was trying to right it with the patient still seated in it. He further averred that he then checked on the patient and plaintiff, both of whom advised him that they were "okay."
At Rivera's deposition, taken two and one-half weeks after the submission of his affidavit, Rivera testified that no one other than himself had secured the patient in the ambulette, that his job required to him to prevent anyone else from doing so, and that he did so before driving the ambulette up the hill prior to the accident. He further testified that he had no recollection of wheeling the patient into the ambulette, although he acknowledged that it was his job to do so. He stated that he locked the wheelchair and secured it with tie-downs, but had no specific recollection of seeing plaintiff fastening his seat belt or instructing him to do so, although he routinely gave such instructions to patients and aides who were his ambulette passengers and believed that he must have done so in this case because of "force of habit." Rivera further stated that he drove away slowly up a "very steep" hill that was not a "safe place." He further stated that after hearing shouting, he slowly stopped the ambulette and looked in the rearview mirror to see that the wheelchair had fallen over, with the patient still in it, lying on his back with his feet in the air.
Rivera averred that when he opened the ambulette doors, he saw plaintiff sitting in about the same spot where he had been sitting, facing sideways toward the patient. Rivera further stated that plaintiff was not complaining of pain or injury and that, working together, he and plaintiff were able, with some difficulty, to dislodge the wheelchair and place it upright again. Rivera further testified that he had secured many wheelchairs inside ambulettes, but had no idea why the wheelchair tipped over in this case. He noted, however, that the two hooks securing the front of the wheelchair had come undone. Rivera further averred that he never saw plaintiff attempt to secure the wheelchair or the tie-downs. In his reply affidavit submitted subsequent to Rivera's deposition, plaintiff argued that Rivera repeatedly testified that he could not recall details about the day of the incident and that his affidavit represented a feigned attempt by defendants' counsel to create an issue of fact to avoid the granting of partial summary judgment in plaintiff's favor.
The motion court granted plaintiff's motion in full, finding that plaintiff had made a [*4]prima facie showing that he was an innocent passenger in defendants' ambulette, citing Garcia v Tri-County Ambulette Serv. (282 AD2d 206 [1st Dept 2001]) and Johnson v Phillips (261 AD2d 269 [1st Dept 1999]), and that as such, he could not be found responsible for the accident in the absence of defendants' showing that he had interfered with the operation of the vehicle, which defendants had not done. The court further found that defendants had failed to meet their burden of providing a nonnegligent explanation for the accident. The court concluded that the only logical explanation for the accident was that Rivera was negligent in securing the wheelchair and driving recklessly, causing the wheelchair to fall over.
On this appeal, defendants' principal arguments are that plaintiff failed to establish his own freedom from fault, given Rivera's account that he ensured that plaintiff was seated and belted; that issues of fact remain as to how the incident occurred, in that the motion court's conclusion that no such issues exist was based on the court's making credibility determinations in plaintiff's favor and thereby usurping the exclusive province of a jury to make such determinations; and that any injury to plaintiff would have resulted from plaintiff's attempt to move the wheelchair. Defendants further argue that even if plaintiff had established his freedom from fault, he failed to show that defendants were negligent, or that their negligence proximately caused plaintiff's injuries, citing Huerta-Saucedo v City Bronx Leasing Inc. (147 AD3d 695 [1st Dept 2017]). Plaintiff responds that the alleged issues of fact raised by Rivera's deposition conflicted with Rivera's own affidavit and were clearly feigned.
At the outset, the record makes abundantly clear that plaintiff was an innocent passenger in defendants' ambulette. Defendants have failed to raise triable issues of fact on the issues of whether plaintiff played any role in driving the ambulette, securing the wheelchair or attempting to move the wheelchair after Rivera had secured it and prior to the accident. Indeed, Rivera's two accounts of the accident are consistent with each other, as well as with plaintiff's account, to the extent of plaintiff's lack of involvement in causing the accident. Specifically, in both of Rivera's accounts of the accident, and in plaintiff's testimony, plaintiff neither drove the ambulette nor secured the wheelchair with locks and tie-downs. Rivera's and plaintiff's accounts of the accident are also in accord that plaintiff neither touched the wheelchair, its locks or its tie-downs prior to the accident, nor could he have prevented the accident from occurring. Exercising our authority, pursuant to CPLR 3212(g), "to limit issues of fact for trial, by specifying which facts are not in dispute," we should find that plaintiff was "free from culpable conduct on the issue of liability" (Garcia v Tri-County Ambulette Serv., Inc., 282 AD2d at 207).
Furthermore, defendants have failed to offer any explanation of the proximate cause of the accident which does not involve their negligence. In this case, only one vehicle was involved in the accident, a vehicle owned and operated by defendants (cf. Jarrett v Claro, 161 AD3d 639 [1st Dept 2018] [summary judgment on the issue of defendants' liability precluded by question as to the comparative fault of two defendants, each aligned with a different vehicle]; Huerta-Saucedo v City Bronx Leasing Inc., 147 AD3d 695 [same]). And here, it is conceded that the proximate cause of the injury to plaintiff's knee was his contact with the wheelchair. Although there may be conflicting theories as to whether that injury was attributable to the negligent driving of the vehicle, or to the negligent locking and securing of the wheelchair inside the vehicle, or both, in any case, it was negligent action by Rivera — and no one else — that caused plaintiff's contact with the wheelchair. Moreover, neither Rivera's affidavit nor his deposition testimony contains any evidence that plaintiff or anyone other than he was responsible for the accident. Rivera admitted at his deposition that he alone had secured the wheelchair and that he had no explanation as to why it had tipped over, although he acknowledged seeing that the two hooks securing the front of the wheelchair had come undone. Thus, regardless of the inconsistencies in Rivera's two versions of events, the fault lies with defendants, the driver and owners of the single vehicle that caused plaintiff's injury, and not with plaintiff or any other driver.
Defendants' argument that the motion court erred in crediting plaintiff's version of the facts while discounting defendant Rivera's affidavit and testimony, thereby usurping the jury's exclusive province in making such determinations, is unavailing, as the court may make such a determination on a finding that a party's factual allegations are "so implausible as to permit the [*5]conclusion that [the] allegations are necessarily feigned" (see Black v Chittenden, 69 NY2d 665, 669 [1986]).
Here, Rivera's deposition testimony contradicts his earlier affidavit statement that he recalled checking twice to ensure that plaintiff was seated and belted before he started to drive. Specifically, Rivera testified a mere 2½ weeks later that he did not recall ensuring that plaintiff had fastened his seat belt, although he routinely advised his patient and aide passengers to do so, and that he believed that he did so in this case out of "force of habit." Thus, Rivera's affidavit was "directly contradict[ed by] deposition testimony [later] given by the same witness, without any explanation accounting for the disparity, [and therefore] create[d] only a feigned issue of fact . . . insufficient to defeat a properly supported motion for summary judgment'" (Telfeyan v City of New York, 40 AD3d 372, 373 [1st Dept 2007], quoting Harty v Lenci, 294 AD2d 296, 298 [1st Dept 2002]).
The majority's view that plaintiff may have taken some action during the time that Rivera, by his own account, departed from the ambulette to retrieve his cell phone, as well as defendants' arguments that plaintiff's injuries are either attributable to his post-accident efforts to right the wheelchair or, alternatively, could have resulted from some defect in the wheelchair or in its locks and tie-downs are based on nothing more than sheer speculation (see Martinez v Cofer, 128 AD3d 421, 422 [1st Dept 2015] [defendant's "bare speculation" did not raise issue of fact]). Accordingly, I disagree with the majority's conclusion that issues of fact are raised by bare speculation as to what occurred during Rivera's purported absence from the vehicle. I also reject defendants' attempts to create issues of fact by presenting implausible accounts of the accident and bare speculation as to the proximate cause of plaintiff's injuries.
Moreover, even if this case did present an issue of comparative fault on plaintiff's part, plaintiff would not be required to make a prima facie showing that he was free from comparative fault in order to be awarded partial summary judgment (see Rodriguez v City of New York, 31 NY3d 312, 324-325 [2018] ["To be entitled to partial summary judgment a plaintiff does not bear the double burden of establishing a prima facie case of defendant's liability and the absence of his or her own comparative fault"]; accord Chan v Choi, 165 AD3d 498, 499 [1st Dept 2018]). Rather, it would suffice for plaintiff to eliminate all material issues of fact that defendant Rivera was the proximate cause of the accident, as, in my view, plaintiff has done here.[FN1]
Accordingly, I would affirm the order of Supreme Court granting plaintiff's motion for partial summary judgment on the issue of liability.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: MAY 2, 2019
CLERK



Footnotes

Footnote 1: To the extent plaintiff argues that defendants may be found liable under the doctrine of res ipsa loquitur, I am in accord with the majority's refusal to consider this argument, as it was first raised before the motion court in plaintiff's reply papers, and is based in part upon Rivera's deposition testimony, which was not available to defendants at the time they filed their opposition papers (see Matter of Kennelly v Mobius Realty Holdings LLC, 33 AD3d 380, 381-82 [1st Dept 2016]).