**Tijaro v Madison 465 W LLC**

2025 NY Slip Op 31736(U)

May 13, 2025

Supreme Court, New York County

Docket Number: Index No. 153984/2020

Judge: Paul A. Goetz

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| | |
|---|---|
| **PRESENT:** **HON. PAUL A. GOETZ** | **PART** **47** |
| *Justice* | |

-----------------------------------------------------------------------------X

OSCAR TIJARO,

                         Plaintiff,

                -against-

MADISON 465 W LLC, MJM ASSOCIATES
CONSTRUCTION LLC, TOMEK BUILDERS CORP., and
VERACITY PARTNERS, LLC,

                       Defendants.

-----------------------------------------------------------------------------X

MADISON 465 W LLC and MJM ASSOCIATES
CONSTRUCTION LLC,

                     Third-Party Plaintiffs,

                -against-

TOMEK BUILDERS CORP.,

                     Third-Party Defendant.

-----------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 153984/2020 |
| **MOTION DATE** | 01/29/2024, 01/29/2024, 01/29/2024 |
| **MOTION SEQ. NO.** | 004 005 006 |

**DECISION + ORDER ON MOTION**

Third-Party
Index No. 596079/2020

The following e-filed documents, listed by NYSCEF document number (Motion 004) 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 94, 95, 139, 149, 150, 154, 155, 156, 157, 160, 161, 162, 164, 167, 170, 171, 172, 173, 174, 175, 182, 184, 185, 186, 187, 188

were read on this motion for                     SUMMARY JUDGMENT           .

The following e-filed documents, listed by NYSCEF document number (Motion 005) 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 140, 143, 144, 145, 146, 147, 148, 151, 163, 165, 168, 176, 177, 178, 179, 180, 181, 183, 189, 190, 191, 195

were read on this motion for                     SUMMARY JUDGMENT           .

The following e-filed documents, listed by NYSCEF document number (Motion 006) 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 111, 112, 113, 138, 141, 142, 152, 158, 159, 166, 169, 192, 193, 194

were read on this motion for                     SUMMARY JUDGMENT           .

[* 1]

In this Labor Law personal injury action, defendant/third-party defendant Tomek Builders Corp. (Tomek) moves, pursuant to CPLR § 3212, for summary judgment dismissing the complaint as against it. In addition, Tomek moves for summary judgment dismissing all crossclaims and third-party claims for common-law indemnification and contribution as against it (MS #4).

Defendants Madison 465 W LLC (Madison), MJM Associates Construction LLC (MJM), and Veracity Partners LLC (Veracity) (collectively, the Madison defendants) move, pursuant to CPLR § 3212, for summary judgment dismissing the complaint as against them. The Madison defendants also move for summary judgment on their third-party claims and/or crossclaims as against Tomek (MS #5).

Plaintiff Oscar Tijaro moves, pursuant to CPLR § 3212, for partial summary judgment on liability on his Labor Law § 240 (1) claim as against Tomek and the Madison defendants (MS #6).

## BACKGROUND

This action arises out of plaintiff's accident on March 20, 2020 at 465 Washington Street in Manhattan (the premises), which was undergoing a gut renovation (NYSCEF Doc No. 89, plaintiff's transcript, p. 30). Madison was the owner of the premises (NYSCEF Doc No. 99) and Veracity was the general contractor on the renovation project (NYSCEF Doc No. 91, Diaz tr at 14). Veracity retained Tomek as the structural framework subcontractor (NYSCEF Doc No. 93); Tomek then subcontracted its work to nonparty FMR Construction Corp. (FMR), plaintiff's employer (NYSCEF Doc No. 94).

**153984/2020   TIJARO, OSCAR vs. MADISON 465 W LLC**
**Motion No.  004 005 006**

**Page 2 of 26**

2 of 26

Plaintiff's Testimony (NYSCEF Doc No. 89)

At the time of his accident, plaintiff was working for FMR, a company owned by Freddy Angamarca (*id.*, p. 27 [plaintiff could not recall the name of the company during his deposition but referred to "Freddy's company"]). Plaintiff worked for FMR for three to four weeks as a "cutter," meaning that he "was the one in charge of cutting the sheetrock before it's installed" (*id.* at 27-28). Plaintiff worked with a helper, who would place screws on the sheetrock to secure it to the wall (*id.* at 28-32 [also referring to his foreman, Valentin Diaz]). Plaintiff testified that they planned to install sheetrock on all the floors of the building (*id.* at 33).

Between 10:30 and 11:00 a.m. on the date of his accident, plaintiff was working in the living room/dining room of an apartment on the third floor of the building (*id.* at 35-38). He was using a six-foot fiberglass A-frame ladder to install sheetrock in the ceiling (*id.* at 39, 42). Plaintiff did not know if the ladder "was from the contractor that had the contract for the building or Freddy's," but it was in good condition and plaintiff did not have any issues using it (*id.* at 40, 42-43, 61). Plaintiff placed the ladder on the floor, opened it, locked its safety bars, and climbed to the fourth rung so that he could use a rotor to cut a piece of sheetrock in the ceiling (*id.* at 46-49). However, "the spot where [plaintiff] needed to cut was a little bit [out of reach] to the right side . . . because there was a lot of garbage containers around that area and it was very cramped and there was no way for [him] to put the ladder closer" (*id.* [also noting that there were two packages of sheetrock laid on the floor]). In order to reach the part of the sheetrock he needed to cut, plaintiff put his right foot on one of the garbage containers, which had wheels on the bottom (*id.*). As he finished cutting, however, "the garbage container moved and so did the ladder and that's when [he] fell" and was injured (*id.*).

**153984/2020   TIJARO, OSCAR vs. MADISON 465 W LLC**
**Motion No.  004 005 006**

**Page 3 of 26**

Plaintiff testified that he had complained "that there was a lot of garbage on the floor and there was no space for [them] to put the ladders" (*id.* at 52, 53). Plaintiff testified that Freddy told plaintiff and his coworkers that their "job was to put on sheetrock," and "not to do other people's job [since] there were . . . laborers that were supposed to" move the garbage containers and other debris (*id.* at 55).

Valentin Diaz's Testimony (NYSCEF Doc No. 91)

Diaz testified that he was Veracity's superintendent on the date of the accident (*id.* at 9-10, 15); it was his responsibility to "make sure everybody [was] safe and make sure everybody [did the job] according to the drawings," including the employees of subcontractors (*id.* at 19, 26). Veracity employed two laborers who were onsite daily to remove debris from the work area using wheeled garbage containers (*id.* at 20-22, 54).

On the date of plaintiff's accident, Diaz received a phone call indicating that someone was injured on the second or third floor (*id.* at 36). When Diaz arrived, he asked plaintiff if he could walk, to which plaintiff responded that he could not; Diaz then called 911 (*id.* at 37). Diaz observed tools, the ladder (which was standing upright), and a mini garbage container nearby (*id.* at 38-39, 70); he did not observe any sheetrock or debris on the floor, nor was he aware of any complaints regarding same (*id.* at 40, 41, 61).

Veracity's project manager completed an accident report (*id.* at 52) which states:

> "Worker was hanging sheetrock on the ceiling and fell off a ladder. Witness stated injured had 1 foot on a ladder and one foot on a rolling mini container when he lost balance and fell, injured claimed lower back pain. Statement was given in Spanish and translated by project superintendent" (NYSCEF Doc No. 134).

Tomasz Dziedziach's Testimony (NYSCEF Doc No. 92)

Dziedziach, an owner of Tomek (*id.* at 10), testified that Tomek subcontracted all its work—including installing framing, insulation, sheetrock, and taping—to FMR, but he did not

**153984/2020  TIJARO, OSCAR vs. MADISON 465 W LLC**
**Motion No.  004 005 006**

**Page 4 of 26**

4 of 26

supervise its work (*id.* at 12-13, 22). Dziedziach believed that Veracity and MJM were the "same company" because they had the same owners and same employees (*id.* at 15). On the date of plaintiff's accident, Dziedziach received a phone call from Diaz, who said that plaintiff "was on the ladder and stepped on the mini-container; and the mini-container rolled off; and he fell" (*id.* at 24, 33).

## PROCEDURAL HISTORY

Plaintiff commenced this action against Madison and MJM, asserting claims for violations of Labor Law §§ 200, 240 (1), 240 (2), 240 (3), and 241 (6) and for common-law negligence (NYSCEF Doc No. 1).

Madison and MJM subsequently commenced a third-party action against Tomek, asserting claims for contractual indemnification, breach of contract for failure to procure insurance, common-law indemnification, and contribution (NYSCEF Doc No. 20).

Plaintiff subsequently filed a supplemental summons and complaint and amended complaint adding Tomek as a direct defendant, asserting the same claims against Tomek (NYSCEF Doc No. 41).

Thereafter, plaintiff commenced a separate action against Veracity, Index No. 155808/21, asserting claims for violations of Labor Law §§ 200, 240 (1), 240 (2), 240 (3), and 241 (6) and for common-law negligence (NYSCEF Doc No. 98).

Veracity also asserts claims for contractual indemnification, common-law indemnification, contribution, and breach of contract against Tomek (NYSCEF Doc No. 83).

By decision and order December 10, 2021, the two actions were consolidated under this index number (NYSCEF Doc No. 100).

**153984/2020  TIJARO, OSCAR vs. MADISON 465 W LLC**                          **Page 5 of 26**
**Motion No.  004 005 006**

5 of 26

## DISCUSSION

"It is well settled that 'the proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact'" (*Pullman v Silverman*, 28 NY3d 1060, 1062 [2016], quoting *Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). "Failure to make such showing requires denial of the motion, regardless of the sufficiency of the opposing papers" (*Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985] [internal citations omitted]). "Once such a prima facie showing has been made, the burden shifts to the party opposing the motion to produce evidentiary proof in admissible form sufficient to raise material issues of fact which require a trial of the action" (*Cabrera v Rodriguez*, 72 AD3d 553, 553-554 [1st Dept 2010], citing *Alvarez*, 68 NY2d at 342).

"The court's function on a motion for summary judgment is merely to determine if any triable issues exist, not to determine the merits of any such issues or to assess credibility" (*Meridian Mgmt. Corp. v Cristi Cleaning Serv. Corp.*, 70 AD3d 508, 510-511 [1st Dept 2010] [internal citations omitted]). The evidence presented in a summary judgment motion must be examined "in the light most favorable to the non-moving party" (*Schmidt v One New York Plaza Co.*, 153 AD3d 427, 428 [2017], quoting *Ortiz v Varsity Holdings, LLC*, 18 NY3d 335, 339 [2011]) and bare allegations or conclusory assertions are insufficient to create genuine issues of fact (*Rotuba Extruders v Ceppos*, 46 NY2d 223, 231 [1978]). If there is any doubt as to the existence of a triable fact, the motion for summary judgment must be denied (*id.*).

### A. Labor Law §§ 240 (2) and (3)

As a preliminary matter, plaintiff agreed to discontinue his Labor Law §§ 240 (2) and (3) claims in his opposition to defendants' motions for summary judgment (NYSCEF Doc No. 170 ¶

**153984/2020 TIJARO, OSCAR vs. MADISON 465 W LLC**
**Motion No. 004 005 006**

**Page 6 of 26**

6 of 26

3). Accordingly, the parts of defendants' motions for summary judgment (MS #4, MS #5) seeking dismissal of these claims will be granted.

### B. Labor Law § 240 (1)

Plaintiff moves for partial summary judgment on his Labor Law § 240 (1) claims as against Madison, MJM, Tomek, and Veracity. Plaintiff contends that he used the garbage container as a makeshift platform, along with the ladder, because he did not have enough space to stand on the ladder with both feet and had to sideload the ladder to perform his work. He asserts that he is entitled to summary judgment because the unsecured ladder moved when the garbage container moved.

To support his position, plaintiff submits an affidavit, in which he avers that he "testified that in order to perform the sheetrocking work in the room [he] could not place both feet on the ladder, which was blocked by the construction objects, including the several garbage containers in the room wherein [he] was doing sheetrocking work" (NYSCEF Doc No. 101, plaintiff aff, ¶ 3). Plaintiff states that:

> "Because of these objects, including the garbage containers around this cramped space in the room, [he] could not put the six foot A-frame ladder closer in order to be able to reach and cut the 8 feet long x 4 feet wide sheetrock from above. To be able to do the job, [plaintiff] needed to step with one foot onto a garbage container whose height was approximately the same as the height of the fourth step from the bottom of the six foot A-frame ladder [he] was standing on at the time of [his] accident" (*id.*, ¶ 4).

Plaintiff further states that it was the custom and practice of Freddy's company to utilize these containers as a makeshift platform while he was at the job site (*id.*, ¶ 12). According to plaintiff, he was never warned nor told not to stand on the container; rather, plaintiff followed what his fellow workers, including his supervisor, did (*id.*). He maintains that the only available device was the A-frame ladder (*id.*, ¶ 13).

**153984/2020   TIJARO, OSCAR vs. MADISON 465 W LLC**
**Motion No.  004 005 006**

**Page 7 of 26**

Tomek contends, in support of its motion, that plaintiff's Labor Law § 240 (1) claim should be dismissed because he was the sole proximate cause of his accident. Tomek argues that the accident was not caused by any defect in the ladder, but resulted when plaintiff decided to step off the well-supported ladder onto a movable garbage can with wheels that moved when he did so. Tomek maintains that plaintiff was well aware that this was unsafe and was contrary to safety instructions. Tomek also contends that plaintiff's affidavit should be disregarded because it contradicts his deposition testimony.

As support, Tomek submits an affidavit from Marlon Adrian Saguay Barrionuevo (Barrionuevo), who avers that he was employed by Freddy Angamarca's company in March 2020 (NYSCEF Doc No. 142, Barrionuevo aff, ¶ 1). However, as noted by plaintiff, Barrionuevo only speaks Spanish and his affidavit is not accompanied by an affidavit of a qualified translator attesting to its accuracy. Therefore, Barrionuevo's affidavit is inadmissible (*see Eustaquio v 806 Cortlandt Holdings, Inc.*, 95 AD3d 548, 548 [1st Dept 2012]; *Reyes v Arco Wentworth Mgt. Corp.*, 83 AD3d 47, 54 [2d Dept 2011]).

The Madison defendants also argue that plaintiff was the sole proximate cause of his accident. They contend that plaintiff was provided with a functional safety device (the A-frame ladder), but elected to misuse the ladder by partially stepping off it onto the wheeled garbage can.

Labor Law § 240 (1), known as the Scaffold Law, provides as relevant:

> "All contractors and owners and their agents . . . in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed."

**153984/2020  TIJARO, OSCAR vs. MADISON 465 W LLC**
**Motion No.  004 005 006**

**Page 8 of 26**

8 of 26

[* 8]

Labor Law § 240 (1) "imposes a nondelegable duty on owners and contractors to provide devices which shall be so constructed, placed and operated as to give proper protection to those individuals performing the work" (*Quiroz v Memorial Hosp. for Cancer & Allied Diseases*, 202 AD3d 601, 604 [1st Dept 2022] [internal quotation marks and citations omitted]). It "'was designed to prevent those types of accidents in which the . . . protective device proved inadequate to shield the injured worker from harm directly flowing from the application of the force of gravity to an object or person'" (*John v Baharestani*, 281 AD2d 114, 118 [1st Dept 2001], quoting *Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 501 [1993]).

The absolute liability found in section 240 "is contingent upon the existence of a hazard contemplated in section 240 (1) and the failure to use, or the inadequacy of, a safety device of the kind enumerated therein" (*O'Brien v Port Auth. of N.Y. & N.J.,* 29 NY3d 27, 33 [2017] [internal quotation marks and citation omitted]; *Narducci v Manhasset Bay Assoc.*, 96 NY2d 259, 267 [2001]). Therefore, section 240 (1) "does not cover the type of ordinary and usual peril to which a worker is commonly exposed at a construction site" (*Buckley v Columbia Grammar & Preparatory*, 44 AD3d 263, 267 [1st Dept 2007]). In order to prevail on a Labor Law § 240(1) claim, a plaintiff must establish that the statute was violated, and that this violation was a proximate cause of the plaintiff's injuries (*Barreto v Metropolitan Transp. Auth.*, 25 NY3d 426, 433 [2015]).

"It is well settled that a statutory violation is established if a scaffold or ladder shifts, slips, or collapses, thereby causing injury to a worker" (*Castillo v TRM Contr. 626, LLC*, 211 AD3d 430, 430-431 [1st Dept 2022], citing *Panek v County of Albany*, 99 NY2d 452, 458 [2003]). This rule applies in situations where a ladder is inadequate if it cannot be used effectively in light of the configuration of the work area (*see Castillo*, 211 AD3d at 430-431; *see*

**153984/2020 TIJARO, OSCAR vs. MADISON 465 W LLC**
**Motion No. 004 005 006**

**Page 9 of 26**

[* 9]

also *Hoffman v SJP TS, LLC*, 111 AD3d 467, 467 [1st Dept 2013]; *Vasquez v Cohen Bros. Realty Corp.*, 105 AD3d 595, 598 [1st Dept 2013]).

However, "there can be no liability under section 240 (1) when there is no violation and the worker's actions . . . are the 'sole proximate cause' of the accident" (*Cahill v Triborough Bridge & Tunnel Auth.*, 4 NY3d 35, 40 [2004]).  Stated differently, "if adequate safety devices are provided and the worker either chooses for no good reason not to use them, or misuses them, the plaintiff will be deemed the sole proximate cause of his injuries, and liability will not attach under § 240 (1)" (*Fernandez v BBD Developers, LLC*, 103 AD3d 554, 555 [1st Dept 2013]; *see also Gallagher v New York Post*, 14 NY3d 83, 88 [2010]; *Robinson v East Med. Ctr., LP*, 6 NY3d 550, 554 [2006]; *Cahill*, 4 NY3d at 40).  It is settled law, however, that "if a statutory violation is a proximate cause of an injury, the plaintiff cannot be solely to blame for it" (*Blake v Neighborhood Hous. Servs. of N.Y. City*, 1 NY3d 280, 290 [2003]).

It is undisputed that Madison was the owner of the premises on the date of the accident (NYSCEF Doc No. 99).  Therefore, Madison may be held liable under sections 240 (1) and 241 (6) (*see Sanatass v Consolidated Inv. Co., Inc.*, 10 NY3d 333, 340 [2008]).

Plaintiff argues that "MJM/Veracity was the general contractor" (NYSCEF Doc No. 97 at 2).  In response, the Madison defendants contend that plaintiff has failed to show that MJM is a party subject to the Labor Law.  An entity will be liable as a contractor under the statute if it was "'responsible for coordinating and supervising the entire construction project and was invested with a concomitant power to enforce safety standards and to hire responsible contractors'" (*Valdez v Turner Constr. Co.*, 171 AD3d 836, 839 [2d Dept 2019], quoting *Kulaszewski v Clinton Disposal Servs.*, 272 AD2d 855, 856 [4th Dept 2000]).  It is well settled that an entity's "right to exercise control over the work denotes its status as a contractor, regardless of whether it

153984/2020   TIJARO, OSCAR vs. MADISON 465 W LLC
Motion No.  004 005 006

Page 10 of 26

actually exercised that right" (*Milanese v Kellerman*, 41 AD3d 1058, 1061 [3d Dept 2007]).

Plaintiff failed to show that MJM was the general contractor on the construction project. Diaz

testified that Veracity, not MJM, was the general contractor on the project, and that MJM and

Veracity had the same owners (NYSCEF Doc No. 106, Diaz tr at 14, 71). Therefore, plaintiff is

not entitled to partial summary judgment under section 240 (1) as against MJM.

It is undisputed that Tomek is not an owner or general contractor. Thus, Tomek can only

be held liable as an agent of either an owner or general contractor.

> "When the work giving rise to these duties has been delegated to a third party, that
> third party then obtains the concomitant authority to supervise and control that work
> and becomes a statutory 'agent' of the owner or general contractor. Only upon
> obtaining the authority to supervise and control does the third party fall within the
> class of those having nondelegable liability as an 'agent' under sections 240 and
> 241"

(*Russin v Louis N. Picciano & Son*, 54 NY2d 311, 318 [1981]).

> "'To be treated as a statutory agent, the subcontractor must have been delegated the
> supervision and control either over the specific work area involved or the work
> which [gave] rise to the injury. If the subcontractor's area of authority is over a
> different portion of the work or a different area than the one in which the plaintiff
> was injured, there can be no liability under this theory'"

(*Rodriguez v Riverside Ctr. Site 5 Owner LLC*, 234 AD3d 623, 625 [1st Dept 2025], quoting

*Nascimento v Bridgehampton Constr. Corp.*, 86 AD3d 189, 193 [1st Dept 2011] [internal

quotation marks omitted]).

Plaintiff does not make any argument in his moving papers as to why Tomek is a

responsible party under the Labor Laws. Accordingly, plaintiff is not entitled to summary

judgment under Labor Law § 240 (1) as against Tomek (*see Alvarez*, 68 NY2d at 324).

Tomek argues that plaintiff's affidavit directly contradicts his prior deposition testimony.

The First Department has determined that "[a]ffidavit testimony that is obviously prepared in

support of ongoing litigation that directly contradicts deposition testimony previously given by

**153984/2020  TIJARO, OSCAR vs. MADISON 465 W LLC**                     **Page 11 of 26**
  **Motion No.  004 005 006**

11 of 26

the same witness, without any explanation accounting for the disparity, 'creates only a feigned issue of fact, and is insufficient to defeat a properly supported motion for summary judgment'" (*Telfeyan v City of New York*, 40 AD3d 372, 373 [1st Dept 2007], quoting *Harty v Lenci*, 294 AD2d 296, 298 [1st Dept 2002]). Nevertheless, courts have considered affidavits that add more detail to prior deposition testimony (*see e.g. Severino v 157 Broadway Assoc., LLC*, 84 AD3d 505, 506 [1st Dept 2011]; *Bosshart v Pryce*, 276 AD2d 314, 315 [1st Dept 2000]). Contrary to Tomek's contention, plaintiff's affidavit does not directly contradict his deposition testimony, but merely elaborates on his prior testimony. Indeed, plaintiff's affidavit is consistent with his prior deposition testimony that he could not place both feet on the ladder due to obstructions in the area, including several garbage containers in the room where he was working (NYSCEF Doc No. 101, plaintiff aff, ¶¶ 3-4; NYSCEF Doc No. 89, plaintiff tr at 46-47, 49).

Here, plaintiff has made a prima facie showing of entitlement to summary judgment on his Labor Law § 240 (1) claim, in light of the uncontroverted evidence that plaintiff used the garbage container as a makeshift platform due to obstructions in the area and that garbage container and the ladder moved, causing him to fall (*see Castillo*, 211 AD3d at 430-431; *Keenan v Simon Prop. Group, Inc.*, 106 AD3d 586, 588 [1st Dept 2013]). Plaintiff testified that "the spot where he needed to cut was . . . to the right side because there was a lot of garbage containers around that area and it was very cramped and there was no way for [plaintiff] to put the ladder closer" (NYSCEF Doc No. 102, plaintiff tr at 49). He stated that he tried to reach where he had to cut and then put one of his feet on one of the garbage containers (*id.*). He testified that "[a]s he was finishing cutting, the garbage container moved and so did the ladder and that's when [he] fell" (*id.*). Plaintiff further avers that it was his employer's custom and practice to use the garbage containers as a makeshift platform (NYSCEF Doc No. 101, plaintiff aff, ¶ 12).

**153984/2020   TIJARO, OSCAR vs. MADISON 465 W LLC**
Motion No.  004 005 006

**Page 12 of 26**

Defendants failed to rebut plaintiff's prima facie showing. In addition, Madison and Veracity failed to raise an issue of fact as to their liability under section 240 (1) in opposition to plaintiff's motion. Plaintiff was not required to show that the ladder was defective (*see Rivera v Suydam 379 LLC*, 216 AD3d 495, 495-496 [1st Dept 2023]; *Orellano v 29 E. 37th St. Realty Corp.*, 292 AD2d 289, 290-291 [1st Dept 2002]). As indicated above, the ladder proved inadequate for the nature of plaintiff's task and the elevation-related risks associated with his work. Thus, plaintiff cannot be the sole proximate cause of his injuries (*see Blake*, 1 NY3d at 290).

Defendants have also not submitted any admissible evidence contradicting plaintiff's statement that it was the custom and practice to use the garbage containers as a makeshift platform (*see Lopez v Halletts Astoria LLC*, 205 AD3d 573, 574 [1st Dept 2022] ["Plaintiff was not the sole proximate cause of the accident, as the testimony show that the accepted practice among S&E workers was to step onto the tower when removing the screw at issue"], citing *Biaca-Neto v Boston Rd. II Hous. Dev. Fund Corp.*, 34 NY3d 1166, 1168 [2020]). Plaintiff's failure to move the garbage container constitutes, at most, contributory negligence, which is not a defense to liability (*see Rocovich*, 78 NY2d at 513 ["Negligence, if any, of the injured worker is of no consequence"]). Even if plaintiff had been directed to move the garbage containers, "'an instruction by an employer or owner to avoid using unsafe equipment or engaging in unsafe practices is not a 'safety device' in the sense that plaintiff's failure to comply with the instruction is equivalent to refusing to use available, safe and appropriate equipment'" (*Hill v Acies Group, LLC*, 122 AD3d 428, 429 [1st Dept 2014], quoting *Gordon v Eastern Ry. Supply*, 82 NY2d 555, 563 [1993]). The fact that Diaz observed that the ladder was upright when he responded to the scene of the accident does not raise an issue of fact. As the First Department observed in a

153984/2020 TIJARO, OSCAR vs. MADISON 465 W LLC
Motion No. 004 005 006

Page 13 of 26

factually similar case, "[i]n the absence of any evidence that the ladder was not moved or repositioned after plaintiff fell, it would be speculative to infer from the superintendent's testimony that the ladder did not fall over" (*Kebe v Greenpoint-Goldman Corp.*, 150 AD3d 453, 454 [1st Dept 2017]; *see also Wasilewski v Museum of Modern Art*, 260 AD2d 271, 272 [1st Dept 1999]).

Accordingly, the part of plaintiff's motion (MS #6) seeking summary judgment on the issue of liability on his Labor Law § 240 (1) claim will be granted as against Madison and Veracity, and denied as to Tomek and MJM; the part of the Tomek's motion (MS #4) for summary judgment on the same claim will be granted; and the part of the Madison defendants' motion (MS #5) for summary judgment on the same claim will be granted as to MJM and denied as to Madison and Veracity.

### C. Labor Law § 241 (6)

Defendants move for summary judgment dismissing plaintiff's Labor Law § 241 (6) claim, arguing that plaintiff has failed to identify a specific or applicable Industrial Code violation. In opposition, plaintiff only relies on 12 NYCRR 23-1.21 (b) (4) (ii). Therefore, plaintiff abandoned any remaining provisions of the Industrial Code cited in his bill of particulars (*Kempisty v 246 Spring St., LLC*, 92 AD3d 474, 475 [1st Dept 2012] ["Where a defendant so moves, it is appropriate to find that a plaintiff who fails to respond to allegations that a certain section is inapplicable or was not violated be deemed to abandon reliance on that particular Industrial Code section."]).

"Labor Law § 241(6) imposes a non-delegable duty on owners and contractors to provide reasonable and adequate protection and safety" (*Toussaint v Port Auth. of New York and New Jersey*, 38 NY3d 89, 93 [2022] [internal citations omitted]) "to persons employed in, or lawfully

**153984/2020   TIJARO, OSCAR vs. MADISON 465 W LLC**
**Motion No.  004 005 006**

**Page 14 of 26**

[* 14]

frequenting, all areas in which construction, excavation or demolition work is being performed" (*Ochoa v JEM Real Estate Co., LLC*, 223 AD3d 747, 749 [2d Dept 2024]). "To sustain a cause of action pursuant to Labor Law § 241(6), a plaintiff must demonstrate that his or her injuries were proximately caused by a violation of an Industrial Code regulation that is applicable to the circumstances of the accident" (*id*.). "[A]n owner or general contractor is vicariously liable without regard to their fault, and even in the absence of control or supervision of the worksite, where a plaintiff establishes a violation of a specific and applicable Industrial Code regulation" (*Bazdaric v Almah Partners LLC*, 41 NY3d 310, 317 [2024] [internal quotation marks and citations omitted]). "The Code regulation must constitute a specific, positive command, not one that merely reiterate[s] the common-law standard of negligence" (*Buckley v Columbia Grammar & Preparatory*, 44 AD3d 263, 271 [1st Dept 2007], *lv denied* 10 NY3d 710 [2008]).

Plaintiff's bill of violations asserts violations of 12 NYCRR 23-1.5; 12 NYCRR 23-1.7 (f); 12 NYCRR 23-1.15; 12 NYCRR 23-1.16; 12 NYCRR 23-1.17; 12 NYCRR 23-1.21; and 12 NYCRR 23-9.6 (NYSCEF Doc No. 88).

Section 23-1.21 governs ladders and ladderways. Section 23-1.21 (b) (4), entitled "Installation and use," provides: "All ladders footings shall be firm. Slippery surfaces and insecure objects such as bricks and boxes shall not be used as ladder footings" (12 NYCRR 23-1.21 [b] [4] [ii]).

Defendants argue that section 23-1.21 is inapplicable because the ladder was in good condition and was well placed, and plaintiff was working below six feet. In response, plaintiff asserts that the "ladder moved and fell" and that "the footings were not firm" (NYSCEF Doc No. 182 at 25).

**153984/2020   TIJARO, OSCAR vs. MADISON 465 W LLC**          **Page 15 of 26**
   **Motion No.  004 005 006**

15 of 26

Section 23-1.21 (b) (4) (ii) is sufficiently specific to support a Labor Law § 241 (6) claim (*Croussett v Chen*, 102 AD3d 448, 448 [1st Dept 2013]). However, plaintiff testified that he secured the ladder, made sure that the ladder was totally open and well placed, and that the ladder was in "good condition" and had footings (NYSCEF Doc No. 102, plaintiff tr at 46, 48, 61-62). In light of this evidence, section 23-1.21 (b) (4) (4) (ii) does not apply (*see Rivera*, 216 AD3d at 496 ["Industrial Code (12 NYCRR) § 23–1.21 (b) (4) (ii), which requires that ladder footings be firm, is inapplicable, as nothing in the record indicates that the ladder had problems with its feet or that the ladder's footing rested on a slippery or unsafe surface"]; *Cordova v 653 Eleventh Ave. LLC*, 190 AD3d 637, 637 [1st Dept 2021] [section 23-1.21 (b) (4) (ii) did not apply where photographs showed that "the ladder was not on a slippery surface but on asphalt, that it had appropriate rubber feet, and no unsecured objects were used as footings"]; *Campos v 68 E. 86th St. Owners Corp.*, 117 AD3d 593, 594 [1st Dept 2014] [no evidence that the ladder "was not in good condition"]; *cf. Estrella v GIT Indus., Inc.*, 105 AD3d 555, 555-556 [1st Dept 2013]).

Accordingly, the part of defendants' motions (MS #4, MS #5) for summary judgment seeking dismissal of plaintiff's Labor Law § 241 (6) claim will be granted.

### D. Labor Law § 200 and Common-Law Negligence

Defendants argue that plaintiff's accident arose from the means and methods in which he performed his work, and they did not direct or control that work.

In opposing defendants' motions, plaintiff contends that defendants failed to meet their initial burden on summary judgment. In any event, plaintiff asserts that MJM/Veracity was responsible for the garbage containers; had laborers who were supposed to remove the containers; and Diaz was on site on a daily basis, was responsible for site safety, and was on

**153984/2020   TIJARO, OSCAR vs. MADISON 465 W LLC**
**Motion No.  004 005 006**

**Page 16 of 26**

constructive notice that the garbage containers were obstructing the work. Plaintiff also argues that Tomek's contract required it to control the means and methods of FMR.

"Labor Law § 200(1) codifies the common-law duty [of an owner or general contractor] to maintain a safe workplace" (*Toussaint v Port Auth. of New York and New Jersey*, 38 NY3d 89, 94 [2022]). "Claims under Labor Law § 200 and the common law fall under two categories: 'those arising from an alleged defect or dangerous condition existing on the premises and those arising from the manner in which the work was performed'" (*Jackson v Hunter Roberts Constr., L.L.C.*, 205 AD3d 542, 543 [1st Dept 2022], quoting *Cappabianca v Skanska USA Bldg. Inc.*, 99 AD3d 139, 143-44 [1st Dept 2012]). "Where an existing defect or dangerous condition caused the injury, liability attaches if the owner or general contractor created the condition or had actual or constructive notice of it" (*id.*). On the other hand, "where the injury was caused by the manner and means of the work, including the equipment used, the owner or general contractor is liable if it actually exercised supervisory control over the injury-producing work" (*id.* [internal citations omitted]).

Here, plaintiff's accident arose out of the means and methods of the work, not a dangerous or defective condition on the premises (*see Howard v Turner Constr. Co.*, 134 AD3d 523, 525 [1st Dept 2015] [where plaintiff fell from a 12- to 14-foot A-frame ladder, "plaintiff's injury was caused by the manner and means of his work, including the equipment he used, and plaintiff was supervised solely by his employer's foreman"]).

Applying the means and methods standard, plaintiff testified that he received instructions exclusively from his employer (NYSCEF Doc No. 102, plaintiff tr at 64; NYSCEF Doc No. 103, plaintiff tr at 17-18). Diaz testified that Veracity did not tell the subcontractors how to do their work (NYSCEF Doc No. 106, Diaz tr at 49, 62). Tomek did not provide ladders on the project

**153984/2020 TIJARO, OSCAR vs. MADISON 465 W LLC**
Motion No. 004 005 006

**Page 17 of 26**

(NYSCEF Doc No. 107, Diezdiach tr at 34). Monitoring and oversight of the timing and quality of the work, mere presence on the job site, and a general duty to ensure compliance with safety regulations and contract specifications are insufficient to impose liability under section 200 or in common-law negligence (*see Villanueva v 114 Fifth Ave. Assoc. LLC*, 162 AD3d 404, 406 [1st Dept 2018]; *Bisram v Long Is. Jewish Hosp.*, 116 AD3d 475, 476 [1st Dept 2014]; *Phillip v 525 E. 80th St. Condominium*, 93 AD3d 578, 579-580 [1st Dept 2012]; *Paz v City of New York*, 85 AD3d 519, 519-520 [1st Dept 2011]). Moreover, where the means and methods of the work are at issue, liability does not attach even if defendants had notice of the unsafe method in which the work was performed (*Comes*, 82 NY2d at 878). Although Tomek's subcontract obligated it to supervise FMR (NYSCEF Doc No. 173), there is no evidence that it actually supervised the work on the date of the accident (*see Cappabianca*, 99 AD3d at 144).

Accordingly, the part of defendants' motions (MS #4, MS #5) for summary judgment seeking dismissal of plaintiff's Labor Law § 200 and common-law negligence claims will be granted.

### E. The Madison Defendants' Claims for Contractual Indemnification Against Tomek

The Madison defendants move for contractual indemnification against Tomek, based upon the following indemnification provision in Tomek's subcontract:

"Indemnification & Hold Harmless

To the fullest extent permitted by law, Subcontractor [Tomek] shall indemnify and hold Veracity Partners, LLC, MJM Associates Construction, LLC, Madison 465 W LLC . . . harmless from and against any and all claims, causes of action, suits, judgments, losses or expenses (including reasonable costs, legal fees and other expenses of litigation in connection with this indemnification and enforcement thereof), *arising from the acts, errors or omissions of violation of law of Subcontractor* [Tomek], it[s] employee's agents, subcontractors, suppliers, vendors, workers, invitees, successor or assigns, *while on or near the project, or while performing contract related work*, and whether or not it is alleged that

**153984/2020   TIJARO, OSCAR vs. MADISON 465 W LLC**
**Motion No.  004 005 006**

**Page 18 of 26**

18 of 26

Additional Insureds in any way contributed to the alleged wrongdoing or are liable due to a non-delegable duty"

(NYSCEF Doc No. 132 [emphasis supplied]).

The Madison defendants argue that plaintiff's accident was clearly caused by an act of Tomek's subcontractor, FMR. The Madison defendants contend that the indemnification provision is also triggered because the accident was solely caused by plaintiff's actions. Even if there is a question of fact as to whether plaintiff was the sole proximate cause of his injuries, they argue the provision is triggered because the accident arose out of the acts of FMR, as plaintiff was injured during the course of his employment for FMR.

In opposition, Tomek asserts that there are questions of fact as to the Madison defendants' potential negligence that precludes summary judgment on their contractual indemnification claims.

"A party is entitled to full contractual indemnification provided that the intention to indemnify can be clearly implied from the language and purposes of the entire agreement and the surrounding facts and circumstances" (*Karwowski v 1407 Broadway Real Estate, LLC*, 160 AD3d 82, 87-88 [1st Dept 2018], quoting *Drzewinski v Atlantic Scaffold & Ladder Co.*, 70 NY2d 774, 777 [1987]). "'The right to contractual indemnification depends upon the specific language of the contract'" (*Trawally v City of New York*, 137 AD3d 492, 492-493 [1st Dept 2016], quoting *Alfaro v 65 W. 13th Acquisition, LLC*, 74 AD3d 1255, 1255 [2nd Dept 2010]) and indemnity contracts "must be strictly construed so as to avoid reading unintended duties into them" (*905 5th Assoc., Inc. v Weintraub*, 85 AD3d 667, 668 [1st Dept 2011]). In contractual indemnification, "the one seeking indemnity need only establish that it was free from any negligence and was held liable solely by virtue of the statutory liability" (*Pena v Intergate Manhattan LLC*, 194 AD3d 576, 578 [1st Dept 2021], quoting *Correia v Professional Data Mgt., Inc.,* 259 AD2d 60, 65 [1st

**153984/2020   TIJARO, OSCAR vs. MADISON 465 W LLC**
**Page 19 of 26**
**Motion No.  004 005 006**

19 of 26

[* 19]

Dept 1999]). Unless the indemnification clause explicitly requires a finding of negligence on behalf of the indemnitor, "[w]hether or not the proposed indemnitor was negligent is a non-issue and irrelevant" (*Correia,* 259 AD2d at 65).

Pursuant to General Obligations Law § 5-322.1, a clause in a construction contract which purports to indemnify a party for its own negligence is against public policy and is void and unenforceable (*Itri Brick & Concrete Corp. v Aetna Cas. & Sur. Co.*, 89 NY2d 786, 795 [1997], *rearg denied* 90 NY2d 1008 [1997]). An indemnification agreement that authorizes partial indemnification "to the fullest extent permitted by law" is enforceable (*Brooks v Judlau Contr., Inc.*, 11 NY3d 204, 210 [2008]). Moreover, even if the indemnification provision does not contain this savings language, the provision may still be enforced where the party to be indemnified is found to be free of any negligence (*Brown v Two Exch. Plaza Partners*, 76 NY2d 172, 179 [1990]).

Here, the indemnification provision requires Tomek to indemnify Veracity, MJM, and Madison from and against all claims "arising from the acts . . . of [Tomek], it[s] employee's agents, subcontractors . . . while on or near the project, or while performing contract related work" (NYSCEF Doc No. 132). The Madison defendants assert that the provision is triggered because "this accident clearly arises out of the acts of Tomek's subcontractor, FMR, as the Plaintiff was injured during the course of his work for FMR" (NYSCEF Doc No. 116 at 28). However, it has not yet been established that an act or omission of Tomek or FMR caused plaintiff's accident. As such, the Madison defendants have failed to establish that the indemnification provision is triggered (*see Spielmann v 170 Broadway NYC LP*, 187 AD3d 492, 494 [1st Dept 2020]; *D'Angelo v Builders Group*, 45 AD3d 522, 525 [2d Dept 2007]; *Gentile v Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 9 Misc 3d 111, 112 [App Term, 1st Dept 2005]

**153984/2020 TIJARO, OSCAR vs. MADISON 465 W LLC**
**Motion No. 004 005 006**

**Page 20 of 26**

["routine performance of plaintiff's duties on the job, or his mere presence on the site, cannot be considered an 'act' sufficient to invoke indemnification under the governing contractual terms"]).

Additionally, the indemnification provision does not violate the General Obligations Law, since it only allows for indemnification "[t]o the fullest extent permitted by law."

Accordingly, the part of the Madison defendants' motion (MS #5) seeking summary judgment on their contractual indemnification claim will be denied, "regardless of the sufficiency of the opposing papers" (*Alvarez*, 68 NY2d at 324).

### F. The Madison Defendants' Claims for Failure to Procure Insurance Against Tomek

The Madison defendants move for summary judgment on their breach of contract claim as against Tomek for failing to procure insurance.

It is well established that an agreement to procure insurance is distinct from an agreement to indemnify (*see Kinney v Lisk Co.*, 76 NY2d 215, 218 [1990]). "A party moving for summary judgment on its claim for failure to procure insurance meets its prima facie burden by establishing that a contract provision requiring the procurement of insurance was not complied with" (*Benedetto v Hyatt Corp.*, 203 AD3d 505, 506 [1st Dept 2022], citing *DiBuono v Abbey, LLC*, 83 AD3d 650, 652 [2d Dept 2011]; *see also Heredia v C.S. Realty Assoc. LLC*, 217 AD3d 496, 498 [1st Dept 2023] [defendants established "prima facie that the lease agreement with E&O contained an insurance procurement provision, and E&O failed to raise an issue of fact by submitting its insurance policy or any proof showing that it had complied with the insurance procurement requirement"]; *accord Crespo v Triad, Inc.*, 294 AD2d 145, 148 [1st Dept 2002] ["The Owners were properly granted partial summary judgment on their cross claim against Bozell for breach of contract for failure to procure insurance where the lease between them

153984/2020   TIJARO, OSCAR vs. MADISON 465 W LLC
Motion No.  004 005 006

Page 21 of 26

21 of 26

required each to procure insurance naming the other as an additional insured, and, in response to

the motion, Bozell failed to tender an insurance policy"]).

Tomek's subcontract required it to procure the following types of insurance:

"1.      Comprehensive General Liability Insurance in the amount of $1,000,000 bodily injury and/or property damage liability per occurrence and $2,000,000 general aggregate, including, but not limited to:
a.  Premises and Operations coverage;
b.  Owners Protective coverage;
c.  General Contractor Protective coverage;
d.  Products and Completed Operations Coverage; …
i.  No exclusions for claims by employees of the insured, or any sub contractor [sic] of the insured;
j.  Blanket contractual Liability coverage
k.  Primary non contributory Coverage"

(NYSCEF Doc No. 132). It also required:

"2.      Excess Liability Insurance in the amount of $5,000,000 per occurrence:
a.  Primary non contributory coverage;
b.  Waiver of Subrogation running to the benefit of Additional Insureds;
c.  No exclusion for claims by employees by employees of the insured, or any sub contractor [sic] of the insured"

(*Id.*).

In opposition to the Madison defendants' motion, Tomek argues that it procured the

required insurance, and submits a commercial general liability insurance policy with a $1 million

per occurrence limit (NYSCEF Doc No. 145, commercial general liability coverage part

declarations page).  Tomek notes that the policy extended coverage to additional insureds in

writing in a contract or agreement (*id.*, endorsement MG 90 38 04 16), and that the policy

provided primary and non-contributory insurance (*id.*, endorsement MG 90 01 04 16).  Tomek

also asserts that it procured an excess liability policy with a $3 million per occurrence limit

(NYSCEF Doc No. 146).

**153984/2020   TIJARO, OSCAR vs. MADISON 465 W LLC**
**Motion No.  004 005 006**
**Page 22 of 26**

22 of 26

In reply, the Madison defendants insist that Tomek breached the contract in three ways: (1) the additional insured endorsement relied upon by the Madison defendants does not extend coverage to Madison or MJM; (2) Tomek purchased an excess policy with limits of $3 million, not $5 million; and (3) both policies "include multiple employee liability exclusions" (NYSCEF Doc No. 163 at 10).

Here, Tomek's commercial general liability policy extends coverage to "[a]ny other person or organization [Tomek was] required to add as an additional insured under the contract or agreement described in Paragraph 1. above" (NYSCEF Doc No. 145, endorsement MG 90 38 04 16). Tomek's subcontract required it to name MJM and Madison as additional insureds. Additional insured coverage is not limited to situations where Tomek and "such person or organization have agreed in writing in a contract or agreement . . . that such person or organization be added as an additional insured on your policy" (*id.*). Thus, contrary to the Madison defendants' contention, MJM and Madison qualify as additional insureds under the policy (*cf. Gilbane Bldg. Co./TDX Constr. Corp. v St. Paul Fire & Mar. Ins. Co.*, 31 NY3d 131, 135 [2018] [additional insured coverage "include[d] as an insured any person or organization with whom [the insured had] agreed to add as an additional insured by written contract"]). Although the Madison defendants argue that both policies contain employee liability exclusions, they have not cited to any specific exclusions in either policy, and the court's review of the policies does not reveal any such exclusions for claims by employees of Tomek's subcontractor.

However, Tomek breached its contract by procuring an excess policy with limits of $3 million, rather than the required $5 million (*see Lima v NAB Constr. Corp.*, 59 AD3d 395, 397 [2d Dept 2009] [although subcontractor obtained commercial general liability coverage naming contractor as additional insured, it failed to procure specific coverage required under the

153984/2020   TIJARO, OSCAR vs. MADISON 465 W LLC
Motion No.  004 005 006

Page 23 of 26

23 of 26

provisions of the subcontract, entitling contractor to recover damages for failure to procure insurance]; *Nrecaj v Fisher Liberty Co.*, 282 AD2d 213, 214 [1st Dept 2001] [contractor was obligated to obtain liability insurance naming owner as an additional insured and providing single occurrence limit of $2,000,000, and contractor's insurance policy had a combined single limit coverage of only $1,000,000; contractor was liable to owner for any damages that owner had to pay in excess of $1,000,000 but less than $2,000,000]).

Accordingly, the part of the Madison defendants' motion (MS #5) seeking summary judgment on their breach of contract claim against Tomek will be granted (*see Heredia*, 217 AD3d at 498).

### G. The Madison Defendants' Claims for Common-Law Indemnification and Contribution Against Tomek

Tomek moves for summary judgment dismissing the crossclaims and third-party claims for common-law indemnification and contribution against it, arguing that it was not negligent.

In opposition, the Madison defendants contend that there are questions of fact as to whether Tomek actually supervised and controlled plaintiff's work. According to the Madison defendants, Tomek inspected the work, and had the authority to stop FMR's work if it observed any unsafe conditions. In addition, Tomek supplied materials for FMR's work on the site.

Generally, "the predicate of common-law indemnity is vicarious liability without actual fault on the part of the proposed indemnitee" (*Trustees of Columbia Univ. v Mitchell/Giurgola Assoc.*, 109 AD2d 449, 453 [1st Dept 1985]). "To be entitled to common-law indemnification, a party must show (1) that it has been held vicariously liable without proof of any negligence or actual supervision on its part; and (2) that the proposed indemnitor was either negligent or exercised actual supervision or control over the injury-producing work" (*Naughton v City of New*

**153984/2020  TIJARO, OSCAR vs. MADISON 465 W LLC**
Motion No.  004 005 006

**Page 24 of 26**

24 of 26

*York*, 94 AD3d 1, 10 [1st Dept 2012]; *see also McCarthy v Turner Constr., Inc.*, 17 NY3d 369, 377-378 [2011]).

"Contribution is available where two or more tortfeasors combine to cause an injury and is determined in accordance with the relative culpability of each such person" (*Godoy v Abamaster of Miami*, 302 AD2d 57, 61 [2d Dept 2003], *lv dismissed* 100 NY2d 614 [2003] [internal quotation marks and citation omitted]). "The 'critical requirement' for apportionment by contribution under CPLR article 14 is that 'the breach of duty by the contributing party must have had a part in causing or augmenting the injury for which contribution is sought'" (*Raquet v Braun*, 90 NY2d 177, 183 [1997], quoting *Nassau Roofing & Sheet Metal Co. v Facilities Dev. Corp.*, 71 NY2d 599, 603 [1988]).

Here, as noted above, there is no evidence that Tomek was negligent. Moreover, as the Court of Appeals held in *McCarthy*, "a party's . . . authority to supervise the work and implement safety procedures is not alone a sufficient basis for requiring common-law indemnification. Liability for indemnification may only be imposed against those parties (i.e., indemnitors) who exercise actual supervision" (*McCarthy*, 17 NY3d at 378). There is no evidence that Tomek actually supervised the work that resulted in plaintiff's injury.

Accordingly, the part of Tomek's motion (MS #4) seeking dismissal of the crossclaims and third-party claims for common-law indemnification and contribution against it will be granted.

### CONCLUSION

Accordingly, it is

**ORDERED** that the motion (MS #4) of defendant/third-party defendant Tomek Builders Corp. for summary judgment is granted to the extent of dismissing plaintiff's Labor Law §§ 240

**153984/2020   TIJARO, OSCAR vs. MADISON 465 W LLC**
**Motion No.  004 005 006**

**Page 25 of 26**

(2) and (3) claims, Labor Law § 241 (6) claim, Labor Law § 200 claim, and common-law negligence claim, and the cross-claims and third-party claims for common-law indemnification and contribution against it, and the motion is otherwise denied; and it is further

**ORDERED** that the motion (MS #5) of defendants Madison 465 W LLC, MJM Associates Construction LLC (MJM), and Veracity Partners, LLC (collectively, the Madison defendants) for summary judgment is granted to the extent of dismissing plaintiff's Labor Law §§ 240 (2) and (3) claims as against defendant MJM only; dismissing plaintiff's Labor Law § 241 (6) claim, Labor Law § 200 claim, and common-law negligence claim as against all the Madison defendants; and granting the Madison defendants partial summary judgment on their breach of contract claim against defendant/third-party defendant Tomek Builders Corp.; and the motion is otherwise denied; and it is further

**ORDERED** that the motion (MS #6) of plaintiff Oscar Tijaro for partial summary judgment under Labor Law § 240 (1) is granted on the issue of liability as against defendants Madison 465 W LLC and Veracity Partners, LLC, with the issue of plaintiff's damages to be determined at the trial of this action, and the motion is otherwise denied.

20250513110401PG0ETZ72E97053198B4785B5A389EBB9212FC2

_____
**5/13/2025**
**DATE**

_____
**PAUL A. GOETZ, J.S.C.**

| CHECK ONE: | | CASE DISPOSED | | | X | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|---|---|
| | | GRANTED | | DENIED | X | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | | FIDUCIARY APPOINTMENT | REFERENCE |

**153984/2020   TIJARO, OSCAR vs. MADISON 465 W LLC**
**Motion No.  004 005 006**                                                                 **Page 26 of 26**

26 of 26

[* 26]